THE STATE *vs.* JOHN GODFREY & *als.*

By the charter of the " Penobscot Mill Dam Company," they were authorised to erect a dam " *between* the foot of *Rose's* or *Treat's* falls in *Bangor*, and *McMahon's* falls in *Eddington*," on the *Penobscot* river. *Held*, that *McMahon's* falls were *excluded*, and that an erection above the foot of these falls, which obstructed the public navigation and use of the river, was a nuisance.

The indictment charged the offence as having been committed in *Bangor*, though in fact a portion of the dam was in the town of *Eddington*, both in *Penobscot* County. *Held* to be well enough ; the place being laid merely by way of *venue*, and not constituting any part of the description of the offence.

THIS was an indictment against the defendant for a nuisance, to wit, for erecting and continuing across the *Penobscot* river, a certain dam, whereby the free navigation of the river was obstructed. The defendants justified under the authority of an act of the Legislature, incorporating "The Penobscot Mill Dam Company," and as riparian proprietors.

By this act, the Company were authorised to erect a dam across the *Penobsot* river, "between the foot of *Rose's* or *Treat's* falls in *Bangor*, and *McMahon's* falls in *Eddington*, for the purpose of flowing the water a sufficient height for the safe and convenient passage of rafts and boats," &c.

The Chief Justice, before whom the case was tried, was requested by the counsel for the defendants, to instruct the jury in the following manner : 1. That a dam built any where between the foot of *Treat's* falls in *Bangor*, and the head of *McMahon's* falls in *Eddington*, would be within the limits of the charter of

the *Penobscot Mill Dam Corporation.* This the Judge declined, instructing them that the corporation was restricted to the *foot of McMahon's falls.* 2. That the words in the charter, " between the foot of *Treat's* falls and *McMahon's* falls in *Eddington,* give the corporation a right to go to that pitch of the falls which is highest up the river, on the *Eddington* side, and that they have a right to run their dam from that point in a direct line across the river, and are not bound to follow the course of the falls. And the Court so instructed them, with this qualification, that they might run their dam from the *foot,* but not from the *head* of these falls. 3. That this being a criminal prosecution, the statute giving a right to erect a dam, must have a liberal construction ; and therefore, if the corporation cannot go above the foot of *McMahon's* falls, in *Eddington,* yet if there is a doubt where the foot of these falls is, and they acted prudently and carefully, and had good reason to believe, that they were not beyond the limits of their charter, they are not guilty of wilfully erecting and continuing a nuisance. But the Judge instructed the jury, that the defendants were not justified by the charter, if they were clearly satisfied that the dam was without the limits prescribed. 4. That the defendants, being owners of the land on both sides of the river, had a common law right to erect such dams as they chose, within their own limits, and therefore, if they have gone beyond the limits of their charter, but have not exceeded their own limits, they are not guilty, if they have left all their legal rights, to the public. Upon this point, the Judge's direction to the jury was, that the indictment was not sustained, unless the erection was proved to be an annoyance to the public right. 5. That an alteration in the course of the current of the river, is not an interference with the public rights, unless those rights are impaired. And they were so instructed. 6. That the public had no other rights in the river, than to as good a passage as they had been accustomed to enjoy ; and therefore, if such a passage was left, the corporation had a right to confine the public to such a passage, and to exclude them from other parts of the river, within their limits ; and they were so instructed. As they were also, *Seventhly,* that such an alteration of the current, confinement, and exclusion, are contemplated by the words of the char-

ter. 8. That if the jury should find, that the river is of no value to the public, for any other purpose than rafting, the defendants are not guilty on the ground of injuring the navigation of the river for boats. And the jury were instructed, that the defendants were not guilty, if the public navigation was not injured. 9. That under the provisions of the charter, the defendants are not liable to this indictment, if the jury should find, that at the time they were indicted, they had not completed their erections, that they had used reasonable diligence, and that such erections as they had made, were clearly such as were consistent with the object of improving the navigation by erecting a sluice and lock or locks. But the Court instructed the jury that the defendants had no right for the time charged to impede the navigation more than they improved it. 10. That if the jury should find that when the defendants were indicted last *October,* the erections *were not completed, this indictment cannot be sustained,* but the Court ruled and directed as under the ninth request. 11. That if any part of such erections is not in *Bangor,* the defendants cannot be found guilty, under this indictment, for any such part, and that if such part of said erections as is in *Bangor,* is not a nuisance, then the defendants are not guilty. Intending to reserve this question, the Court declined the instruction. 12. That the allegation in the indictment, that the defendants did continue, and still do continue the nuisance, is a material allegation, and therefore, if the defendants did not continue the nuisance, they are not guilty ; and that the testimony does not show a continuance by the defendants, but by the corporation. The Chief Justice left this point to the jury upon the evidence, stating to them, that the defendants, might be found guilty of the erection only. 13. That if the jury should find that the rights of only a part of the public, and not of the whole, are affected, this indictment being for a public nuisance, cannot be sustained ; and that the testimony in the case, does not show a public, but a private injury. The Judge instructed the jury that it was a public nuisance, if to the annoyance of all persons, having occasion to navigate the river. 14. That if there is any doubt as to any or all the material points in the allegations and charges, in the indictment, the defendants are entitled to the benefit of that doubt,

this being a criminal prosecution. And so the Judge instructed them if the doubt be reasonable. 15. That the defendants cannot be found guilty, for not improving or trying to improve, the navigation of the river, but that the remedy for this would be a *quo warranto,* and not an indictment. They were instructed that the defendants might be found guilty if they had impaired the navigation.

At the time the cause was summed up to the jury, certain questions were propounded to them, to all of which answers were returned. They found that a portion of the dam was not only above the foot of *McMahon's* falls, but above the head of the falls. That at the time of the finding of the indictment in *October,* the free passage of *Penobscot* river with boats and rafts, which is of great value to the public, was obstructed by the upper cross dam. That two thirds of this dam was in *Eddington,* and the remainder in *Bangor.* That said erections are inconsistent with the object of improving the navigation of the river for boats and rafts. That it was within the power of the defendants to erect a lock or locks and a sluice which would render the navigation of the river for boats and rafts as good as it was before, or better, but it was not their intention to make such locks and sluice way, or to make the navigation of the river good at all events. That at the time of the finding of the indictment the corporation had used reasonable diligence in order to complete their plan. That the falls, where the dam is built, is called *Mansell's* falls, on the west side of the river, and *McMahon's* falls on the east side. That all the upper cross dam is above the foot of the main pitch of *McMahon's* falls. That a dam built at the lowest part of *McMahon's* falls would be more likely to improve the navigation of the river, than a dam built on any part of the falls above.

The jury found the defendants guilty. If the instructions withheld, ought to have been given, or those given, were erroneous, except where the jury had negatived the facts upon which they were founded, the verdict was to be set aside and a new trial granted.

The case was very elaborately argued in writing, by *F. Allen* and *Rogers,* for the defendants, and by *Clifford,* Attorney General, and *R. Williams,* for the State.

The State *a.* John Godfrey & als.

The defendant's counsel, to the point that the terms of the charter did not necessarily exclude *McMahon's* falls, cited *Whitney* v. *Whitney,* 14 *Mass.* 88 ; *Holbrook* v. *Holbrook, & al.* 1 *Pick.* 248 ; 7 *Mass.* 524 (*Appendix ;*) *Windsor* v. *China,* 4 *Greenl.* 303 ; *Pugh* v. *The Duke of Leeds,* 2 *Cowp.* 714.

That the place named in the indictment is material, and must be proved as laid, and that a new trial should be granted for the instruction withheld on this point, they cited, *Hawk. Pl. of the Crown,* 435 ; 4 *Black. Com.* 306 ; *Com Dig. title Judgment,* G. 2, (*in notis ;*) 1 *Chitty's Cr. Law,* 201, and cases there cited ; *Commonwealth* v. *Hall & al.* 15 *Mass.* 240 ; *Aylwin* v. *Ulmer,* 12 *Mass.* 22 ; *Tyler* v. *Ulmer,* 12 *Mass.* 163 ; *Dudley* v. *Sumner,* 5 *Mass.* 488.

That the right of the public on this river is subject to the control of the legislature, *Commonwealth* v. *Charleston,* 1 *Pick.* 180 ; and that for violating its charter, the proper remedy against this corporation, is by information in the nature of a *quo warranto,* or *scire facias,* they cited, *Commonwealth* v. *Fire & Mar. Ins. Co.* 5 *Mass.* 230 ; *Chester Glass Company* v. *Dewey,* 16 *Mass.* 94 ; 19 *Johns. Rep.* 456 ; *Enfield Toll Bridge Co.* v. *Con. River Co.* 7 *Conn. Rep.* 46 ; 2 *Kent's Com.* 251.

The Attorney General cited the following authorities as to the construction of the charter, *Reeve* v. *Leonard & al.* 1 *Mass.* 91 ; *Hatch* v. *Dwight & al.* 17 *Mass.* 289 ; *Com. Dig. title Grant,* G. 7, 12.

As to the rights of the public on this river, *Corsan* v. *Blazo & al.* 2 *Bin.* 475 ; 14 *Serg. & Rawle,* 71 ; *Cates* v. *Waddington,* 1 *McCord,* 580 ; *Canal Commissioners* v. *The People,* 5 *Wend.* 423 ; *Vooght* v. *Winch,* 2 *Barn. & Ald.* 662 ; *Miles* v. *Rose,* 2 *Taunt.* 705.

That the erection by the defendants was a nuisance, 2 *Com. Dig. Tit. C. Art.* 1, 31 ; *Berry & al.* v. *Carle,* 3 *Greenl.* 269 ; *Exparte Jennings,* 6 *Cowen,* 519 ; *Palmer* v. *Mulligan,* 3 *Caines' R.* 387 ; *Hooker* v. *Cummings,* 20 *Johns.* 90 ; *Commonwealth* v. *Ruggles,* 10 *Mass.* 391 ; *Shaw* v. *Crawford,* 10 *Johns.* 236 ; 2 *Danes' Abr.* 688 to 712 ; 3 *Kent's Com.* 334 ; *Adams* v. *Pease,* 2 *Conner's R.* 481 ; *Ingraham* v. *Hutchinson,* 2 *Conner's R.* 591 ; 1 *Hawk. P. C. c.* 76, § 1 ; 2 *Com. Dig.* 397.

Weston C. J. — delivered the opinion of the Court.

The defendants justify the act, charged as a nuisance, under a statute to incorporate the Penobscot Mill Dam Company, and also as riparian proprietors. The first question raised has reference to the limits prescribed by their charter. The language is, " between the foot of *Rose's* or *Treat's* falls in *Bangor,* and *McMahon's* falls in *Eddington.*" That which lies between one given place and another, is something distinct from the place given on either side. Perhaps no word in our language has a more precise and definite meaning, than between. It indicates an intermediate space, which excludes, and cannot include that to which it refers. If land is granted between one township and another, both are excluded from the grant. If land is conveyed, lying between lot number one and number three, it could not be pretended that either of these lots passed by the deed.

The force and effect of this term is so well understood, that we have been referred to but one case, in which any attempt has been made to give it a different meaning. In *Revere* v. *Leonard & al.* 1 *Mass.* 91, it was contended by counsel that, *if the words of the grant could not be otherwise satisfied*, it would be reasonable and equitable to construe the words in the deed in question, " between the slitting mill and the forge dam," so as to include the forge dam ; but the whole court were of opinion that these words did not admit of that construction.

We have been referred to a class of cases, in which there has been much discussion, as to the computation of time from one day or date to another. Many of them are noticed in *Windsor* v. *China,* 4 *Greenl.* 298, cited in the argument. There is a want of uniformity in the decisions, whether the date or the day of the date, shall or shall not be included in the estimate. The analogy between these cases, and the one before us, is not sufficiently strong to give them an authoritative application, and if it was, their want of uniformity is such, as to afford us little aid in determining the point under consideration.

It is urged that the foot of *McMahon's* falls not being in express terms made the boundary in that direction, as the foot of *Treat's* falls is in the other, the implication arising from the omission is, that the legislature did not intend to limit the corporation

to the lower part of *McMahon's* falls. If the corporation had been authorized to make their erections between those falls, both would have been excluded. The public object contemplated avowedly was, to improve the navigation of the river. To do this the more perfectly, it might be necessary to flow out *Treat's* falls ; and this affords a sufficient reason for authorizing the corporation to erect a dam below them, and to appoint the foot as a boundary there, which did not apply to *McMahon's* above. If the use of the term foot was necessary to include *Treat's* falls within their limits, of which we think there can be no reasonable doubt, it was equally necessary to designate the head of *McMahon's* falls, to include them within the charter. If the whole of the falls, given for the commencement and termination of their limits, were constructively included, there was no occasion for referring them expressly to the foot of *Treat's*. But by using that term, it is fairly to be understood, that in the judgment of the legislature, those falls would not otherwise have been included. The same reason, which induced them to designate the foot of *Treat's*, would have suggested the necessity of referring to the head of *McMahon's*, if they intended to extend the limits thus far in that direction.

Nor do we perceive that the subject matter, or the object contemplated, calls for a different construction, if we were at liberty to depart from the plain meaning of the language used. The power was conferred on the corporation, " for the purpose of flowing the water a sufficient height, for the safe and convenient passage of rafts and boats, from the foot of *Ayer's* falls in *Orono*, to *Bangor*." Although the corporation are authorized to erect more than one dam within their limits ; yet, one across the river would create a water power quite sufficient for all their purposes. It is hardly probable that more than one was within their plan of operations, as the whole real and personal estate, they were permitted to hold, was not to exceed two hundred thousand dollars. If erected below *Treat's* falls, it would flow them out, and if below *McMahon's*, it would have the same effect upon them, if the dam was of sufficient height; but if above both, they would both be left unimproved. However much we may regret the error committed by the corporation, in erecting their dam without

their chartered limits ; yet such appears to be the fact, upon the finding of the jury, holding, as we feel constrained to do, that the foot of.*McMahon's* falls is the point, to which they are restricted in that direction.

This renders the inquiry, as to the correctness of the ninth instruction, which has been made the subject of complaint, unimportant. If an impediment to the navigation, during the progress of their erections, was essential to their operations, and therefore warranted, as is contended, by necessary implication, no such implied power could attach to the operations of the corporation, or of individuals under them, beyond their chartered limits.

If the erection of the dam was an annoyance to the right of the public, to navigate the river, as the jury have found, the defendants are guilty, unless justified by the charter, under which they claim to have acted; and the burthen of proof is thrown upon them to make out this justification. They proceeded under the statute at their peril. If they erred, their justification fails, although they may have intended to keep within their limits, and although reasonable doubts might have existed as to their extent. And the jury, in our judgment, were properly instructed to this effect.

The Judge was requested to instruct the jury, that the indictment charging the nuisance as in *Bangor*, the defendants could not be found guilty of erecting that part of the dam, which is in *Eddington*, nor of that part which is in *Bangor*, unless it was of itself a nuisance. This he declined, intending to reserve the question.

*Sergeant Hawkins*, in his treatise upon pleas of the crown, *book* 2, *ch.* 46, § 34, lays it down as a settled rule of law, that a place, laid only for a *venue* in an indictment, is no way material upon evidence, and that proof of the offence in any other place in the same county maintains the indictment, as well as if it had been proved in the very same place. But he further states, that where a certain place is made part of the description of the fact, which is charged against the defendant, the least variance as to such place, between. the evidence and the indictment, is fatal. *Blackstone* regards a mistake in the place unimportant, unless

where it is laid, not merely as a *venue*, but as part of the description of the offence. 4 *Bl. Com.* 306. In the *King* v. *Hammond*, 1 *Strange*, 44, the defendant was indicted for a nuisance in the common highway, without any averment, describing from, or to what points the way passed ; and the court upon demurrer held it unnecessary, deeming it sufficient, that it was charged in the highway generally.

In *Senhouse* v. *Christian & als.* 1 *T. R.* 561, *Buller J.* says, " it is true that in ancient proceedings, an highway is stated as a road, leading from one rill to another ; but that is done only for the purpose of showing that it is a highway. And it has been settled of late years, that it is not necessary so to state it in an indictment ; for if it be laid to be an highway, that is sufficient."

An objection similar in principle, was taken in the company of proprietors of the *Mersey and Irwell navigation* v. *Douglas et als.* 2 *East*, 497, which was an action of the case for a nuisance in the river *Irwell*, at *Preston*, in the county of *Lancaster*. If *Preston* was matter of local description it was wrong, and the Judge accordingly ordered a nonsuit at the trial. A rule nisi having been obtained for setting aside the nonsuit, and granting a new trial, the court made the rule absolute, holding that *Preston* was used merely as a venue, and not as a part of the local description, where the nuisance was committed.

In the *Commonwealth* v. *Hall et als.* 15 *Mass.* 240, the court held it to be sufficient to aver that the nuisance was in the highway. Upon an objection that the termini were not stated, the court overruled it, saying, that as the nuisance was averred to have been erected at *Sutton*, in the county of *Worcester*, and the highway was alleged to be there, the way was sufficiently described. But they did not hold this to have been essential, nor was a question raised whether *Sutton* was used merely as a venue, or as descriptive of the offence. Judgment was there arrested upon another point. In an indictment against a town for not repairing a highway, it is of the essence of the charge, and necessarily descriptive of it, to aver that the highway is in that town.

Whether this objection can prevail or not, depends upon the question, whether *Bangor* is laid as a venue, or as part of the

The State *v.* John Godfrey & als.

description of the offence charged. The offence would have been the same, whether committed in *Bangor*, *Eddington*, or any other town, through which the *Penobscot* runs. It seems therefore to us that *Bangor* is not laid as descriptive of the charge, or as in any manner essential to it, but as a venue, which is necessary in compliance with legal forms, long settled and established. If a venue as such had not been essential, it would have been sufficient, according to the cases, to have charged the defendants with having erected a nuisance in the *Penobscot* river, with the proper averments as to the right of the public to use the same as a navigable river and public highway.

The truth of the averment in the indictment, that the *Penobscot* river is, and has been, a navigable river and common highway, for all the citizens of the state, with their boats and rafts to pass and repass at their free will, has been found by the jury. The defendants, as riparian proprietors, may make any use of the river, consistent with the public right, but this they cannot lawfully obstruct or impair. But it is insisted that the defendants cannot be held liable to an indictment, but should be called upon by a *quo warranto.* A *quo warranto,* or an information in the nature of it, is the proper course of proceedings, by which to ascertain in behalf of the government, whether a charter has been abused, with a view to declare it forfeited. This indictment can have no such effect. It leaves the charter, under which the defendants have attempted to protect themselves, unimpaired. It is conceded that a civil action might be sustained for an injury to an individual, but it is denied that an indictment can be prosecuted for the public injury. We cannot perceive sufficient ground for this distinction. The legislature have the power to authorize an erection in a navigable river, which would otherwise be a nuisance. If thus justified, neither a civil action nor an indictment could be maintained for the erection. If the extent and limitations of the charter cannot be controverted collaterally, but only upon a *quo warranto,* it is an objection, which may be interposed with as much propriety in bar of a civil action, as of a criminal prosecution. In our opinion, this objection cannot prevail. The defendants were authorized by the legislature to erect a dam or dams between certain points. They have erected one above

both. The charter then affords them no protection; and they must be regarded merely as wrongdoers.

Upon a view of the whole case, the opinion of the Court is, that the indictment has been sustained.